UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES *ex rel.* JOHN DOE, | ) | |
| | ) | |
| **Plaintiff, Relator,** | ) | |
| | ) | |
| v. | ) | Civil Case No. 08-846 (RJL) |
| | ) | |
| STAPLES, INC. | ) | |
| | ) | |
| OFFICEMAX, INC. | ) | |
| | ) | |
| TARGET CORP. | ) | |
| | ) | |
| INDUSTRIES FOR THE BLIND, INC. | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**
(March 22, 2013, Dkts. ## 39, 52, 54, 56)

The anonymous plaintiff/relator ("plaintiff" or "relator") in this case alleges that

defendants Staples, Inc. ("Staples"), OfficeMax, Inc. ("OfficeMax"), Target Corp.

("Target"), and Industries for the Blind, Inc. ("IFB") violated the False Claims Act, 31

U.S.C. §§ 3729 *et seq.*, ("FCA") by misrepresenting the origin of imported pencils.   Am.

Compl. ¶¶ 1, 12 [Dkt. #22].   This case comes before the Court on the defendants'

Motions to Dismiss.   *See* OfficeMax's Mot. to Dismiss [Dkt. # 39]; IFB's Mot. to

Dismiss [Dkt. ##52, 52-1]; Target's Mot. to Dismiss [Dkt. ##54, 54-1]; Staples' Mot. to

Dismiss [Dkt. # 56].   Because the relator's claims are based on publicly disclosed

1

information, of which the relator is not the original source, the Court GRANTS the
defendants' motions for lack of subject-matter jurisdiction.

## BACKGROUND

Relator filed this *qui tam* suit anonymously and under seal on May 15, 2008.
[Dkt. #1].   Nearly four years later, on April 2, 2012, the United States advised the Court
that it would not intervene in the case.   [Dkt. #20].   Relator then amended his complaint
on May 21, 2012.   Am. Compl. [Dkt. #22].   According to relator, defendants knowingly
purchased low-cost pencils manufactured in China from suppliers in countries other than
China.   *Id.* at ¶¶ 1, 12.   Relator further alleges that defendants defrauded the United
States government by falsifying the pencils' origin to U.S. Customs and Border Protection
("Customs") in order to avoid various tariffs and duties applicable to Chinese-origin
pencils.   *Id.* at ¶¶ 1, 12–17.

In specific, relator alleges that Staples declared falsely on Customs entry
documents that its pencils originated in Hong Kong, Malaysia, and Taiwan, *id.* at ¶¶
35–36, and that Target falsely declared that its pencils originated in Taiwan and
Indonesia, *id.* at ¶¶ 42–50.   Furthermore, relator alleges that IFB falsely declared that its
pencils originated in Taiwan, *id.* at ¶¶ 51–52, and that OfficeMax falsely declared that its
pencils originated in Vietnam, *id.* at ¶¶ 53–55.   With respect to all defendants, however,
relator bases the allegation that the imported pencils were made in China on the pencils'
price and physical characteristics.   *Id.* at ¶¶ 19, 20, 32, 40, 46, 49, 50, 52, 54.

2

The Amended Complaint has four counts.   Count I is based on antidumping duties applicable to Chinese-origin pencils imposed by the U.S. Department of Commerce. *Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66909 (Dep't of Commerce Dec. 28, 1994); Am. Compl. ¶¶ 10−12, 57.   The current antidumping duty rate is 114.9 percent for most Chinese pencil manufacturers.   *Certain Cased Pencils from the People's Republic of China*, 68 Fed. Reg. 43082 (Dep't of Commerce July 21, 2003) (Final Admin. Review).   Count II is based on duties imposed by the Tariff Act of 1930, 19 U.S.C. § 1304(i), on merchandise imported with an erroneous country of origin marking.   Am. Compl. ¶¶ 15, 59.   Count III is based on regulations requiring importers to pay liquidated damages on Chinese-origin merchandise imported in violation of Customs laws, 19 C.F.R. §§ 113.63(i)(1) and 141.113.   Am. Compl. ¶¶ 15, 61.   Relator has voluntarily dismissed this Count, however, as duplicative of the other counts in his Amended Complaint.   *See* Pl.'s Opp'n to OfficeMax's Mot. to Dismiss, p. 22 [Dkt. #46].   Count IV is based on the Generalized System of Preferences ("GSP") which accords duty-free treatment to imports from GSP-eligible countries, including Indonesia and Thailand.   Am. Compl. ¶¶ 16, 63.

## ANALYSIS

The defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Federal Rule of Civil Procedure 12(b)(6). The Court must address the defendants' Rule 12(b)(1) jurisdictional challenges before the

merits of the case may be considered. *See Vt. Agency of Nat'l Resources v. United States ex rel. Stevens,* 529 U.S. 765, 778 (2000) ("Questions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else.").

## I.  Legal Standards

Under Rule 12(b)(1), "it is presumed that a cause lies outside [the Court's] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).   A plaintiff must establish that the Court possesses jurisdiction by a preponderance of the evidence.  *See Hollingsworth v. Duff,* 444 F. Supp. 2d 61, 63 (D.D.C. 2006).   In resolving defendants' Rule 12(b)(1) challenges, "the Court must give [relator's] factual allegations closer scrutiny than they would receive on a 12(b)(6) motion for failure to state a claim, and the Court may look to matters outside the pleadings." *United States ex rel. Hockett, M.D. v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 45 (D.D.C. 2007) (quotation omitted).   The Court may dismiss relator's complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that [relator] can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.,* 315 F.3d 338, 343 (D.C. Cir. 2003).

The FCA prohibits false or fraudulent claims for payment to the federal government, § 3729(a), and permits civil actions based on such claims to be brought by private individuals acting on behalf of the government, § 3730(b)(1).   A private party

(*i.e.*, a relator) may bring a *qui tam* suit on behalf of the government based on that party's knowledge of fraud committed against the government.   31 U.S.C. § 3729(a)(1)(A)–(B) (2008).   The FCA incentivizes *qui tam* suits by whistleblowers with inside information by allowing relators to receive a portion of the funds that were the subject of the false claim.   31 U.S.C. § 3730(d).   The FCA, however, discourages *qui tam* suits by opportunistic relators merely seizing on public information.   To that end, the FCA divests courts of subject-matter jurisdiction over claims "based upon the public disclosure of allegations or transactions" in specified public channels, "unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).[1] The so-called public disclosure bar is triggered where there is sufficient information in the public domain to "have alerted law-enforcement authorities to the likelihood of wrongdoing."   *United States ex rel. Settlemire v. Dist. of Columbia*, 198 F.3d 913, 918 (D.C. Cir. 1999) (quotations omitted).   The information in the public domain need not "irrefutably prove a case of fraud," however, to trigger the bar.   *Id.* at 919.

An exception to the public disclosure bar exists where a relator qualifies as an "original source" under § 3730(e)(4)(B).   An "original source" is a plaintiff with "direct and independent knowledge" of the relevant facts who has revealed his knowledge to the

---

[1]  The public disclosure bar was amended on March 23, 2010, but the Supreme Court held that the amendments were not retroactive.   *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 130 S. Ct. 1396, 1400 n.1 (2010).   The version of 31 U.S.C. § 3730(e)(4) in effect at the time relator filed his complaint applies to the present action.

government before public disclosure and before filing suit.   31 U.S.C. § 3730(e)(4)(B);

*see United States ex rel. Findley v. FPC–Boron Employees' Club,* 105 F.3d 675, 690

(D.C. Cir. 1997).

## II. Relator's Claim Lacks Subject-Matter Jurisdiction

Our Circuit employs a two-part test that a District Court must apply in evaluating a

relator's claim in a *qui tam* case.   *See United States ex rel. Springfield Terminal Ry. Co.,*

14 F.3d 645, 651 (D.C. Cir. 1994).   First, the Court must evaluate whether the relator's

claims are based upon "allegations or transactions" which were "public[ly] disclos[ed]" in

a "criminal, civil or administrative hearing, in a congressional, administrative or General

Accounting office report, hearing, audit or investigation, or from the news media."   31

U.S.C. § 3730(e)(4)(A).   Second, the Court must evaluate whether the relator fits within

the "original source" exception.   31 U.S.C. § 3730(e)(4)(B).   Unfortunately for the

relator here, he does not pass muster with either of these tests.   How so?

To determine whether the "allegations or transactions" upon which a relator bases

his suit were "public[ly] disclos[ed]" prior to filing, 31 U.S.C. § 3730(e)(4)(A), our

Circuit employs the following formula:

> [I]f $X + Y = Z$, Z represents the *allegation* of fraud and X and Y represent
> its essential elements.   In order to disclose the fraudulent *transaction*
> publicly, the combination of X and Y must be revealed, from which readers
> or listeners may infer Z, *i.e.,* the conclusion that fraud has been committed.

*Springfield Terminal,* 14 F.3d at 654.   *Qui tam* actions are not needed, of course, when X

and Y are in the public domain and "the government presumably has chosen not to

6

pursue" a suit.  *Id.*   Indeed, courts broadly construe the channels of public disclosure

specified in § 3730(e)(4)(A).   *See Schindler Elevator Corp. v. United States ex rel. Kirk,*

131 S. Ct. 1885, 1891 (2011) (noting that the "sources of public disclosure in §

3730(e)(4)(A), especially 'news media,' suggest that the public disclosure bar provides 'a

broa[d] sweep'").   Courts in our Circuit, for example, have construed the term "news

media" to include readily accessible websites.   *See United States ex rel. Green v. Serv.*

*Contract Educ. & Training Trust Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012).   Courts

have also broadly construed the term "administrative reports" to include

publicly-searchable databases.   *See United States ex rel. Rosner v. WB/Stellar IP Owner,*

*L.L.C.,* 739 F.Supp.2d 396, 407 (S.D.N.Y. 2010) (holding that a public database on a city

agency's website was an administrative report subject to public disclosure bar).

 Here, the defendants argue that the "allegations or transactions" upon which the

relator's suit is based were the subject of public disclosure in the news media and

administrative reports within the meaning of § 3730(e)(4)(A).   *See* OfficeMax's Mot. to

Dismiss, pp. 7−11 [Dkt. # 39]; IFB's Mot. to Dismiss, pp. 4−11 [Dkt. #52-1]; Target's

Mot. to Dismiss, pp. 13−17 [Dkt. #54-1]; Staples' Mot. to Dismiss, pp. 26−37 [Dkt. #

56].   I agree.

 The "essential elements" underlying the relator's fraud allegation in this case are

both based on publicly disclosed information.   In particular, the relator bases the

allegedly misrepresented country of origin on shipping data obtained from reports

published by PIERS Global Intelligence Solutions ("PIERS"), a company which "compiles manifest information submitted to Customs by all shippers."   Am Compl. ¶ 22.   The PIERS data does not specify the pencils' country of origin; it does, however, provide a "means . . . to track each shipment to the [Customs entry form] containing the false statement of country of origin," according to relator.   Pl.'s Opp'n to OfficeMax's Mot. to Dismiss, p. 19 [Dkt. #46].   And, most importantly, the PIERS reports are readily accessible to the public on the PIERS website.   *See* http://www.piers.com/ (last visited March 22, 2013).   While not a traditional news source, this site qualifies as "news media" in light of the ample precedent in favor of broad construction of the channels of public disclosure listed in § 3730(e)(4)(A).   Indeed, other courts have found similar trade publications to be "news media."   *See, e.g., United States ex rel. Alcohol Found. v. Kalmanovitz Charitable Found.*, 186 F. Supp. 2d 458, 463 (S.D.N.Y. 2002).   The shipping information underlying the PIERS trade reports is also available to public subscribers through the U.S. Customs and Border Protection Automated Manifest System. 19 CFR §§ 4.7, 103.31(a) (requiring Customs to provide vessel manifest information to the press). The allegedly misrepresented country of origin, here, therefore, was publicly disclosed in both the "news media" and "administrative report[s]" within the meaning of § 3730(e)(4)(A).

Furthermore, the relator bases the alleged fact that the pencils were manufactured in China on a combination of (1) visible physical characteristics of the pencils, and (2)

certain public information about Chinese-origin pencils.   Am. Compl. ¶¶ 19–21, 32, 40, 49, 50, 52, 54.   In particular, according to relator, "Chinese pencils can be readily identified by their overall appearance and quality that is a result of the unique manufacturing processes used in China."   *Id.* at ¶ 20.   The giveaway characteristics noted by relator in the Amended Complaint—erasers and ferrules, position of the lead, color of the wood, and lacquering—are actually described in reports produced by the United States International Trade Commission ("ITC").   *See* ITC Pub. 3820 Cased Pencils from China, Investigation No. 731-TA-669 (Second Review) (2005); ITC Pub. 2816 Certain Cased Pencils from Thailand, Investigation No. 731-TA-670 (Final) (1994). These reports are readily accessible on the internet and qualify as "administrative reports" within the meaning of § 3730(e)(4)(A).   Moreover, the characteristics of defendants' pencils are also publicly disclosed through print media, the internet, and their visibility on public store shelves.

While the relator argues that the second "essential element" in this case is not that the imported pencils originated in China, but rather, "that the claimed manufacturer did not produce pencils imported by the Defendants," Pl.'s Opp'n to OfficeMax's Mot. to Dismiss, p. 12 [Dkt. #46] (emphasis added), this, in the final analysis, is a distinction without a difference.   Put simply, the additional information that the relator gathered from private investigators with respect to the individual manufacturers was not an "additional element[] necessary to state a case of fraud."   *United States ex rel. J. Cooper*

*& Assoc., Inc. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 234 (D.D.C. 2006).

Indeed, according to the relator, the alleged fraud would have been ascertainable by any

person who read the ITC reports and looked at the pencils stocked on defendants' shelves.

*See* Pl.'s Opp'n to Staples' Mot. to Dismiss, p. 14 [Dkt. # 64].   Moreover, the fact that

the relator was able to provide more specific details about the physical characteristics of

Chinese-origin pencils does not solve his jurisdictional problem.   *See Springfield*

*Terminal*, 14 F.3d at 654 ("To require that the evidence and information possessed by the

United States be a mirror image of that in the hands of the *qui tam* plaintiff would

virtually eliminate the [public disclosure] bar.").   If, as the relator argues, the pencils'

appearance and price put defendants on notice of their Chinese origin "without the need

for direct contact with the factories actually producing the pencils," Am. Compl. ¶ 19,

these characteristics were also sufficient to "enable [the government] adequately to

investigate the case and to make a decision whether to prosecute," *Springfield Terminal*,

14 F.3d at 654.

  Finally, because this suit is based upon public disclosures, the relator, to establish

jurisdiction, must demonstrate that he is "an individual who (1) has direct and

independent knowledge of the information on which the allegations are based and (2) has

voluntarily provided the information to the Government before filing an action under this

section which is based on the information."   31 U.S.C. § 3730(e)(4)(B).   Unfortunately

for the realtor, he has failed to do so here.

Knowledge is "direct" where it is "acquired through the relator's own efforts (*i.e.*, without an intervening agency)," *United States ex rel. Davis v. Dist. of Columbia*, 591 F. Supp. 2d 30, 36 (D.D.C. 2008), and "independent" where it "is not itself dependent on public disclosure," *Springfield Terminal*, 14 F.3d at 656 (citations and quotations omitted).   In short, a relator is not an original source "simply because he conducted some collateral research and had background knowledge that allowed him to understand the significance of publicly disclosed information." *United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F. Supp. 292, 300 (D.D.C. 1996).

Here, the relator, who claims to have organized the pencil industry effort to impose antidumping duties on Chinese-origin pencils, Decl. of John Doe ¶¶ 8−9 [Dkt. #47-1], has failed to "allege specific facts—as opposed to mere conclusions—showing exactly how and when he . . . obtained direct and independent knowledge of the fraudulent acts alleged in the complaint," *In re Natural Gas Royalties*, 562 F.3d 1032, 1045 (10th Cir. 2009).   Relator's affidavit states that he learned of the alleged fraud through talking with industry insiders, analyzing trade data, and "hiring investigators in Taiwan, Indonesia and Vietnam to investigate individual suppliers who were identified by sources within the industry."   Decl. of John Doe ¶¶ 10−11 [Dkt. 47-1].   But these kinds of communications do not qualify him as an "original source" for purposes of the public disclosure bar. Indeed, this case is analogous to *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25 (D.D.C. 2007), where a relator alleged Medicare

11

fraud, claiming she heard an alleged perpetrator of the fraud making incriminating statements. *Id.* at 52−53. The district court in that case, not surprisingly, found this claim to be insufficient to make the relator an "original source" because it "relie[d] on several layers of hearsay" and was "highly conclusory in nature." *Id.* at 53. Here, the relator's allegations are similarly based on hearsay and are equally conclusory. Furthermore, the information that the relator obtained here through private investigators is not "first-hand knowledge" and therefore not "direct knowledge." *Id.* (citing *Findley*, 105 F.3d at 690).

## CONCLUSION

Thus, for all of the reasons set forth above, the Court concludes that the relator's claims trigger the FCA's public disclosure bar and the relator has not satisfied the original source exception. Accordingly, the Court GRANTS defendants' motions for summary judgment. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

12